IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| VINCENT FRANCIS HOLBACK, ) | CIVIL ACTION NO. 9:12-2989-RMG-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on October 21, 2008, alleging disability beginning November 1, 2003 due to severe back and left leg problems, post traumatic stress disorder (PTSD), diabetes, Hepatitis B, paralysis of the sciatic nerve, hypertensive vascular disease, hiatal hernia, and dermatophytosis.[2] (R.pp. 125-126, 165). Plaintiff's claim was denied

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

[2] Dermatophytosis is more commonly known as ringworm, a fungal infection of the skin. http://www.healthline.com/health/ringworm, August 15, 2012.



initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on February 3, 2011. (R.pp. 29-62). At the hearing, Plaintiff amended his alleged disability onset date to October 7, 2008. (R.p. 32). The ALJ thereafter denied Plaintiff's claim in a decision issued March 25, 2011. (R.pp. 7-23). The Appeals Council denied review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].



Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was forty-three (43) years old on his amended disability onset date, has a high school education with past relevant work experience as a mechanic, sanitation worker, tool room attendant, and assembly supervisor. (R.pp. 33-34, 125, 166, 182). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[3] of degenerative disc disease, status/post repair of right thumb ulnar collateral ligament, knee arthralgia, PTSD, and depression, thereby rendering him unable to perform any of his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a reduced range of sedentary work[4], and

---

[3] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[4] Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and
(continued...)



was therefore not entitled to disability benefits. (R.pp. 12, 16, 21-23).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly evaluate the cumulative effects of Plaintiff's multiple impairments, by improperly evaluating Plaintiff's credibility, and by failing to properly evaluate Plaintiff's RFC. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.

## I.

Plaintiff initially complains that the ALJ failed to evaluate the cumulative effects of his multiple impairments. Specifically, Plaintiff asserts that although the ALJ mentioned each one of Plaintiff's impairments and compared them to a listing,[5] she "failed to expressly analyze their cumulative effect as required" by Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989)[Holding that disability may result from a number of impairments which, taken separately, might not be disabling, but whose combined effect, taken together, is sufficient to render a claimant unable to engage in substantial activity]. Plaintiff argues that the ALJ identified Plaintiff's degenerative disc disease, status post repair of his right thumb ulnar collateral ligament, knee arthralgia, PTSD, and depression

---

[4](...continued)
carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

[5]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).



as being severe impairments and discussed the effects of each of these impairments individually, but that "at no point during that analysis, did [the ALJ] expressly analyze whether [Plaintiff's] pain associated with his degenerative disc disease, right thumb, and knee arthralgia combined with his Depression and PTSD rendered him disabled". Plaintiff's Brief, p. 25. Plaintiff argues that he experiences constant pain and physical impairments as well as serious mental impairments "which [are] inter-related to his physical impairments and pain", and that the ALJ should have expressly considered this "combination of inter-relation before making a finding of not disabled . . . .," but failed to do so. Id., p. 26.

This argument is without merit. In her decision, the ALJ specifically acknowledged that she had to determine whether Plaintiff had a medically determinable impairment that was severe as well as whether he had impairments that were severe in combination. (R.p. 11). The ALJ then noted the severe impairments Plaintiff had based on the evidence and testimony, as well as various other conditions from which Plaintiff suffers but which were not severe, to include diabetes, alcohol abuse, Hepatitis B, carpal tunnel syndrom, and sinusitis, all of which were found to be under good control and caused no more than minimal functional limitations. (R.pp. 12-13). The ALJ then found that Plaintiff did not have an impairment *or combination of impairments* that met or medically equaled the criteria of a listed impairment, and further concluded that Plaintiff's impairments did not prevent him from being able to perform a reduced range of sedentary work. (R.pp. 14-16).

Although Plaintiff complains that the ALJ mentioned each of Plaintiff's impairments and compared them to a listing but "at no point during the analysis" did she expressly analyze whether his pain combined with his depression and PTSD rendered him disabled, in her discussion and findings the ALJ expressly discussed how Plaintiff's back and knee pain would together limit



him to sitting for six hours in an eight hour day with normal breaks and standing and walking for two hours in an eight hour day for up to thirty minutes at a time with no climbing, crouching, squatting and crawling and only rare performance of kneeling, as well as avoidance of very fine manipulation and work requiring sensitive feeling with his fingers and use of his hands frequently rather than constantly due to his thumb injury. (R.pp. 18-19). The ALJ then specifically considered Plaintiff's PTSD and depression, noting that Plaintiff consistently had GAF scores ranging from 60 to 65,[6] indicating only moderate to mild symptoms being present as well as that Plaintiff's condition was stable and that he was involved in such activities as a men's group at church and had friends outside the home. Nonetheless, in consideration of Plaintiff's testimony that he did not like being around other people or crowds and had trouble concentrating, in addition to the limitations already noted hereinabove, the ALJ further limited Plaintiff to work with no more than brief interaction with the public, no more than casual interaction with co-workers, and to the performance of simple and detailed tasks. (R.pp. 15, 19-20).

In sum, the ALJ concluded that Plaintiff could perform work with the cited limitations resulting from his impairments after review of all the evidence, and summarized her findings with a discussion of how Plaintiff could work with all of these impairments, taking into account the reduced range of work he would need to perform in order to do so. (R.pp. 16, 21). No reversible error is shown in the ALJ's analysis of all of Plaintiff's impairments in her decision. Martise v.

---

[6]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000). A GAF score of 65 indicates that only some mild symptoms of depression or difficulty in social or occupational settings are present. Simons v. Barnhart, No. 04-5021, 2004 WL 2633448, at **2 (4th Cir. Nov. 18, 2004).



Astrue, No 08-1380, 2010 WL 889826 at * 23 (E.D. Mo. Mar. 8, 2010)[ALJ sufficiently considered Plaintiff's impairments in combination by summarizing Plaintiff's medical records and separately discussing each of Plaintiff's alleged impairments] (citing Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994)[conclusory statement that ALJ did not consider combined effects of impairments was unfounded where ALJ noted each impairment and found that impairments, alone or combined, were not of listing-level severity]; Zegray v. Colvin, No. 12-64, 2013 WL 1566632 at * 9 (D.S.C. Apr. 12, 2013)(citing Brown v. Astrue, No. 10-1584, 2012 WL 3716792 at * 6 (D.S.C. Aug. 28, 2012)[Noting that Walker was not meant to be used as a trap for the Commissioner.]).

      As part of the combination argument in his brief, Plaintiff contends that the ALJ should have discussed how his PTSD or depression would , in combination with his other impairments, limit his ability to perform the postural or other work requirements the ALJ found Plaintiff had. However, the ALJ is not required to discuss a finding that she did not make. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; cf. Hill v. Astrue, No. 09-705, 2010 WL 3813258 (S.D.W.Va. Sept. 27, 2010)[ALJ did not err by failing to discuss whether a claimed impairment met a listing where the ALJ found that it was not a "severe" impairment and considered all of claimant's severe and non-severe impairments in combination.]. The decision reflects that the ALJ considered all of Plaintiff's impairments supported by the medical record and subjective testimony, analyzed the degree to which Plaintiff's pain associated with his degenerative disc disease, right thumb, and knee arthralgia together with his depression and PTSD reduced his RFC, and made specific findings as to what work activity Plaintiff could perform with these impairments. In doing so, the ALJ specifically stated at several points in her decision that she was considering the



effects of Plaintiff's impairments both singularly and in combination. See Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007)[ALJ should be taken at this word when he states that he considered all of the claimant's impairments in combination]; cf. Brown, 2012 WL 3716792, at * 6; Oliver v. Astrue, No. 08-886, 2009 WL 1766007 at * 9 (D.S.C. June 22, 2009).

Hence, while Plaintiff may not agree with the ALJ's findings and conclusions, a plain reading of the decision reflects the thorough review and consideration given by the ALJ to the evidence and the effects of all of Plaintiff's impairments, both singularly and in combination, in deciding his RFC. Id., see also Miller v. Astrue, No. 08-62, 2009 WL 2762350 at * * 13-14 (E.D.Mo. Aug. 28, 2009)["Where an ALJ separately discusses the claimant's impairments and complaints of pain, as well as her level of activity, it cannot be reasonably said that the ALJ failed to consider the claimant's impairments in combination"]; Waxvik v. Apfel, No. 99-152, 2001 WL 1820373 at * 4 (D.N.D. Mar. 12, 2001); Isaacs v. Shalala, No. 92-4101, 1994 WL 247276 at * 5 (N.D. Iowa Mar. 11, 1994) Wilfong v. Shalala, No. 93-472, 1994 WL 780186 at * 4 (D.Minn. Oct. 18, 1994); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)[Finding that separate discussion of all of a plaintiff's impairments with the conclusion that these impairments did not prevent the plaintiff from performing her past relevant work was sufficient to establish that the ALJ did not consider Plaintiff's impairments were disabling in combination, and that to "require a more elaborate articulation of the ALJ's thought processes would not be reasonable"]; see also Williams v. Colvin, No. 11-2344, 2013 WL 877128, at *3 (D.S.C. Mar. 8, 2013); Simmons v. Astrue, No. 11-2729, 2013 WL 530471, at * 5, n. 7 (D.S.C. Feb. 11, 2013)["When considering whether the ALJ properly considered the combined effects of impairments, the decision must be read as a whole"]; Glockner v. Astrue, No. 11-955, 2012 WL 4092618, at * 4 (D.S.C. Sept. 17, 2012). This claim is without



merit.

## II.

Plaintiff also complains that the ALJ improperly evaluated his credibility. However, the undersigned does not find that the ALJ conducted an improper credibility analysis, or that her decision otherwise reflects a failure to properly consider the subjective testimony and evidence in this case.

The ALJ reviewed and discussed Plaintiff's testimony, but found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms was not credible to establish impairments of the severity alleged to the extent they were inconsistent with the RFC found in the decision. (R.pp. 16-17). In reaching this conclusion, the ALJ noted that although Plaintiff testified at the hearing that he is in so much pain that he could not get out of bed and that he could not bend or stoop, Plaintiff's medical records reflected that he repeatedly told his medical providers that his back pain was controlled with medication and that he was walking ten blocks at a time. Further, x-rays of Plaintiff's lumbar spine showed only mild degenerative disc disease. See (R.pp. 17-18, 38, 1027, 1029, 1181, 1283, 1409-1410, 1497, 1499, 1538-1539); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]. The ALJ further noted that there was no evidence that Plaintiff had had any orthopedic treatment for back pain since September 2010. Similarly, the ALJ noted Plaintiff's testimony that although that his doctors thought surgery would help his condition, he had not had that surgery because he was "scared" from a previous infection, even though Plaintiff had nevertheless later agreed to and had surgery on his thumb in December 2010. (R.pp. 16-17, 38,

9



1555); see also (R.pp. 1037, 1258, 1529-1530). The ALJ also noted that, in describing his activities of daily living, Plaintiff had himself stated that he drives about 12 to 15 miles per week and if necessary goes to the grocery store. (R.pp. 17, 33, 51, 177). Therefore, in light of the evidence as a whole, the ALJ determined that Plaintiff's allegation that he was in so much pain that he was unable to get out of bed was not credible, but that given Plaintiff's demonstrated degenerative disc disease, and giving Plaintiff every benefit of the doubt, limited Plaintiff to the physical activities noted in the decision with the lifting requirements for sedentary work. (R.p. 18).

With respect to Plaintiff's testimony of knee pain and that his knees give way and his legs are weak, the ALJ compared this testing to Plaintiff's treatment notes from September 2010 (where Plaintiff presented with complaints of bilateral knee pain and popping during activity), at which time testing revealed no instability and "nothing of note" with respect to Plaintiff's gait, posture, or balance. This report concluded that "overall no concerning instability in either knee was evident with testing; no history of knee giving way". (R.p. 1410). The ALJ further noted that there was no medical evidence indicating any followup treatment thereafter for a knee condition and, as previously noted, Plaintiff himself had reported to the VA (and contrary to his testimony at the hearing that his pain prevented him from getting out of bed) that he was trying to be more active, walk even more, and that he could walk about ten blocks. Cf. (R.pp. 38, 1409, 1497). While noting the lack of evidence to corroborate a disabling knee condition, the ALJ nevertheless did credit Plaintiff's complaints that his knee caused him pain, found Plaintiff's knee arthralgia to be a severe impairment, and accommodated for this condition by limiting Plaintiff to no climbing, crouching, squatting and crawling and only rare performance of kneeling (between 1 - 5 % of the day). (R.pp. 18-19).



With respect to Plaintiff's complaints of hand pain, the ALJ noted Plaintiff's testimony that he had carpal tunnel syndrome in both hands and had had surgery on his thumb, as well as Plaintiff complaint of cramping in his hands along with weakness and that he could not grasp a container or apple juice, although Plaintiff did testify that since his surgery he was able to pick up a coin with his left hand but that anything requiring general hand use was difficult. (R.pp. 16-17). The ALJ then compared this testimony with the medical records showing that Plaintiff had surgery on his thumb in December 2010 after it had gotten caught in some boxes he had been lifting (note: notwithstanding Plaintiff's complaints of disabling back problems), that following removal of the "pin" Plaintiff was instructed to start occupational hand therapy, and that after a followup meeting on January 24, 2011, there was no record of Plaintiff receiving any further treatment for this condition. (R.pp. 1383, 1423, 1555). Plaintiff also testified at the hearing that he was going to therapy for his thumb, but although he also attributed some of his hand problems to his carpal tunnel syndrome, the ALJ noted that Plaintiff had not received any treatment for that condition since his amended alleged onset date. (R.pp. 18, 41-42). Nonetheless, the ALJ considered Plaintiff's hand and thumb complaints and limited him to performing gross manipulation, with the avoidance of very fine manipulation (even though Plaintiff testified that he could pinch and pick up a coin), with the additional limitation from work requiring sensitive feeling with the fingers, although Plaintiff could finger to the extent to push buttons or keyboards. Plaintiff was also limited to the use of his hand frequently rather than constantly.

Finally, with respect to Plaintiff's mental impairment, the ALJ noted Plaintiff's testimony of poor memory, that he struggled going out in crowds or being around strange people, that he was untrusting and nervous, and that he had difficulty getting along with people, and



compared that testimony with the evidence that Plaintiff was able to get along with his counsel and the clerks at the VA, that Plaintiff's GAF scores consistently indicated his PTSD and depression resulted in only mild to at most moderate symptoms, that Plaintiff had joined a men's group at church and reported that he enjoyed talking with most of them and was feeling better and happy to have friends outside the home, and that he would frequently not take his medications. (R.pp. 17-20, 33, 38, 43, 51, 1026, 1051, 1192-1193, 1224, 1229, 1235, 1258, 1271, 1431, 1520-1522, 1549). See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may consider whether claimant's activities are consistent with allegations]; English v. Shalala, 10 F.3d 1080, 1084 (4th Cir. 1993) [failure to take prescribed medication, among other evidence, supported ALJ's finding of non-disability]. The ALJ also gave significant weight to the opinion of the state agency medical consultant, who after review of Plaintiff's medical records determined that Plaintiff's depression and PTSD resulted in only a moderate restriction in Plaintiff's activities of daily living, maintaining social functioning, and in maintaining concentration, persistence or pace, with a more detailed Mental Residual Functional Capacity Assessment showing Plaintiff had *no* significant limitations in 17 out of 20 areas of review, with only a moderate limitation in the other three. See generally, (R.pp. 21, 1339, 1341, 1346, 1350-1351). Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

      In light of this evidence as a whole, and despite the fact that Plaintiff's GAF scores consistently revealed no more than mild to moderate mental limitations and that Plaintiff had been non-compliant with his medication and mental health appointments, the ALJ considered his



testimony with respect to his mental state and limited Plaintiff to no more than brief interaction with the general public, no more than casual interaction with coworkers and the performance of simple and detailed tasks, limitations which the ALJ found adequately accommodated any symptoms that Plaintiff may continue to experience from his mental health impairments. (R.pp. 19-20). See McDonald v. Astrue, 293 Fed. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]; Monkes v. Astrue, 262 Fed. App'x 410, 412 (3d Cir. 2008) ["Having previously acknowledged that [the claimant] suffered moderate limitations in concentration, persistence and pace, the ALJ [properly] accounted for these mental limitations in the hypothetical question by restricting the type of work to 'simple routine tasks.'"]; George v. Commissioner, 2013 WL 1136747 at *1 (W.D. Pa. March 18, 2013) [ALJ properly addressed claimant's moderate limitations in concentration, persistence, and pace by finding RFC for work requiring only simple instructions, which avoided direct face-to-face interactions with general public, crowds, groups of people, intensive supervision, close interaction with co-workers, and changes in work setting].

While Plaintiff is correct that the medical record shows that he continued to report the same symptoms over the years and complained about his medications, it is important to note that the ALJ did not find that Plaintiff did not have a serious mental condition. Rather, she determined that Plaintiff's depression and PTSD were severe impairments, but that these conditions were not totally disabling and that Plaintiff's testimony as to the disabling effect of these impairments was not credible for the reasons stated. There is no error presented in this analysis. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; see Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)["The duty to resolve conflicts in the evidence rests



with the ALJ, not with a reviewing court"]. As discussed hereinabove, the decision reflects that the ALJ properly reviewed Plaintiff's subjective testimony from the hearing and found that his statements were not credible and were not supported by the objective evidence of record. Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Ables v. Astrue, No. 10-3203, 2012 WL 967355 at * 11 (D.S.C. Mar. 21, 2012)["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96-7 p.]**.**

When objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight; see SSR 96-7p, 1996 WL 374186, at * 1 (1996); and after a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of Plaintiff's subjective testimony as to the extent of his pain and limitation. Jolley v. Weinberger, 537 F.2d at 1181 [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Patterson v. Astrue, No. 08-1065, 2009 WL 1586941 at * 7 (D.S.C. June 4, 2009)["When objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight. SSR 96-7p, 1996 WL 374186 at * 1 (1996)."]; see Craig, 76 F.3d at 595 ["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]. This argument is therefore without merit. Clarke v. Bowen, 843 F.2d 271, 272-273

14



(8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"].

### III.

Finally, Plaintiff contends that the ALJ failed to properly evaluate his RFC. Specifically, Plaintiff contends that the ALJ's conclusion that he had the capacity to sit for six hours in an eight hours day with normal breaks and to stand and walk for two hours in an eight hour day up to thirty minutes at a time is not supported by the evidence, noting the objective medical evidence showing that Plaintiff suffers degenerative disc disease and that Plaintiff was in chronic pain had been "observed" by many physicians. However, the diagnostic evidence Plaintiff cites (R.pp. 551, 554-555) are imaging studies showing only mild findings. See also (R.p. 556). Some of Plaintiff's other cites in support of this argument are medical reports detailing Plaintiff's description to physicians of the pain he is experiencing; cf. Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; while in a medical report from July 23, 2008, Plaintiff states that "prolonged" standing worsens his pain, which is consistent with the ALJ's finding that Plaintiff should walk for only two hours in an eight hour work day for only up to thirty minutes at a time. (R.pp. 16, 781).

Plaintiff also points to results of an examination performed by Dr. Harriet Steinert on April 6, 2009, wherein Plaintiff complained that he hurt "all the time", could not sit for more than fifteen minutes, spent most of his time lying down, and walked with a cane "all the time because the pain goes down his legs and they buckle". (R.p. 1179). However, in addition to the contrary medical evidence in the record already discussed, Dr. Steinert's own report indicates that she examined Plaintiff and found him to be well nourished, well developed and in no acute distress, that Plaintiff was able to get on and off the examination table without any difficulty, that he had full

15



range of motion in his cervical spine with no tenderness to palpation of the neck, full range of motion of all joints and all four extremities with no tenderness to palpation of any joints, no inflamation, no swelling and no deformity, no sensory or motor deficits in any extremity, no muscle atrophy, normal grip strength and equal bilaterally, that Plaintiff had normal fine motor and gross motor skills in both hands, that his deep tendon reflexes were equal and normal in all extremities, that he had no pedal edema in either lower extremity, and that although Plaintiff was unable to walk on his toes and heels, could not do tandem walking, and could not squat down, he was able to walk across the room without an assistive device with a very antalgic gait.  (R.pp. 1179-1180).  This report does not support the degree of limitation claimed by the Plaintiff.  See Richardson v Perales, 402, U.S. 389, 408 (1971)[assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; see Cruse v. Bowen, 867 F.2d 1183, 1186 (8`ʰ Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; see also Haynes v. Astrue, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that she suffers from pain which precludes her from substantial gainful activity."]; Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment].

      Plaintiff also faults the ALJ's RFC finding with respect to his mental impairment, noting the evidence supporting his claim that he had poor concentration and tolerance, and the state agency consultant's opinion that Plaintiff could persist on simple tasks for periods of at least two



16

hours with avoidance of contact with the general public or working at very close proximity to coworkers. (R.p. 1352). However, the ALJ limited Plaintiff to work with no more than brief interaction with the general public (giving minimal directions such as where the front door is) or more than casual interaction with coworkers, with the finding that he could perform simple and detailed tasks. (R.p. 16). These findings were not only consistent with the medical evidence showing Plaintiff had only mild to at most moderate limitations, the very state agency physician opined cited by the Plaintiff found that Plaintiff had only a moderate limitation in his ability to interact appropriately with the general public, with no significant limitation in his ability to get along with coworkers or peers or maintain socially appropriate behavior. The state agency physician further found that Plaintiff had only a moderate limitation in his ability to carry out detailed instructions, and had no significant limitation in his ability to carry out very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine, complete a normal work day and work week without interruptions and perform at a consistent pace, and work in coordination or proximity to others. (R.pp. 1350-1351). These findings are not consistent with a disabling mental impairment. Smith, 795 F.2d at 345 [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

      The ALJ fully considered all of this evidence in reaching her decision, and while the Plaintiff is correct that the record does contain evidence which might support a more severe RFC finding, that is the very reason for ALJ review. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. The ALJ set forth a comprehensive discussion and analysis in her decision as to why she reached the RFC contained therein, and the undersigned can find no reversible error in this analysis. Cf. Carlson v. Shalala, 999



F.2d 180, 181 (7th Cir.1993) [" . . . the ALJ need not evaluate in writing every piece of testimony and evidence submitted. . . .What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"]; Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

While Plaintiff obviously disagrees with the conclusion reached by the ALJ, his argument that the ALJ failed to properly evaluate his RFC is without merit. Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd; Knox v. Astrue, 327 Fed.Appx. 652, 657 (7th Cir. 2009)["[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"], citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Clarke, 843 F.2d at 272-273 ["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; see Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002); Lee, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"]; Plummer v. Astrue, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden



of providing evidence establishing the degree to which his impairment limits his RFC], adopted by 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012).

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 13, 2013
Charleston, South Carolina



19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

