IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Vincent Francis Holback, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 9:12-2989-RMG |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of

the final decision of the Commissioner of Social Security denying his claim for Disability

Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC,

this matter was referred to a United States Magistrate Judge for pre-trial handling. The

Magistrate Judge issued a Report and Recommendation on November 13, 2013, recommending

that the Court affirm the decision of the Commissioner. (Dkt. No. 21). The Plaintiff filed

objections to the Report and Recommendation and the Commissioner filed a response. (Dkt. No.

25, 26). As more fully set forth below, the Court reverses the decision of the Commissioner and

remands for the award of benefits.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a

determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Where the claimant has multiple impairments but none satisfy independently the criteria for a listed impairment, the Commissioner is obligated to consider the combined effect of the various impairments and determine whether they are the medical equivalent of the criteria of a listed impairment. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 49-50 (1989); 20 C.F.R. § 416.926.

If the claimant does not have a listed impairment or the medical equivalent of a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available "work which exists in significant numbers either in the region where [the claimant] lives or in several regions

of the country" he can perform in light of the RFC determination. 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 404.1520(a)(4)(v). At Step Five, the burden shifts to the Commissioner to "show that

the claimant retains the capacity to perform an alternative work activity and that this specific type

of job exists in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Under the regulations of the Social Security Administration, the Commissioner is

obligated to consider all medical evidence and the opinions of medical sources, including treating

physicians. 20 C.F.R. § 404.1545. The regulation, known as the "Treating Physician Rule,"

imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.*

§ 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . .

treating sources" based on the view that "these sources are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)

and may bring a unique perspective to the medical evidence that cannot be obtained from

objective medical findings alone or from reports of individual examinations, such as consultative

examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner

"[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant]

than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded

controlling weight. Even where the opinions of the treating physicians of the claimant are not

accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a

broad range of specifically identified factors, including the examining relationship, the nature and

extent of the treatment relationship, supportability of the opinions in the medical record,

consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The

-4-

Commissioner is obligated to weigh the findings and opinions of treating physicians and to give

"good reasons" in the written decision for the weight given to a treating source's opinions. SSR

96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

## Factual Background

Plaintiff, a veteran of Operation Iraqi Freedom, suffered various physical and psychiatric

injuries as a result of his 14-month deployment. These included chronic lower back and knee

pain resulting from a 15 to 18-foot fall, posttraumatic stress disorder following a roadside attack

that resulted in his sergeant having his legs blown off, and persistent depression that left Plaintiff

isolated from his family once he returned home. Transcript of Record ("Tr.") at 235, 393, 775,

1019. Plaintiff receives VA disability arising from these active duty injuries. Tr. at 34, 1561-74.

Plaintiff was diagnosed in 2004 with a herniated nucleus pulposus at L5 with

displacement of the S1 nerve root, which has produced persistent complaints of lower back pain

radiating down his legs since his return from Iraq. Tr. at 249, 251, 265, 496, 781, 783-84. This

finding was confirmed in an August 2008 MRI of the lumbar spine. Tr. at 1189. Plaintiff has

also been documented to have bilateral positive straight leg raises. Tr. at 1177, 1180. Dr.

Michael Weinstein, Plaintiff's treating orthopaedic physician, diagnosed him with "bilateral

severe neuroforaminal stenosis" and "neurogenic intermittent claudication," and opined that it

would not be safe for Plaintiff to return to work with these impairments. Tr. at 754, 1037.

Plaintiff underwent a surgical procedure to address his significant spinal pathology in October

2008 which had to be aborted because of technical difficulties and he developed a protracted

postoperative infection that required a second hospitalization. Tr. at 571, 856-57, 860-61. Since

that time, Plaintiff's severe chronic pain has been managed with methadone. Tr. at 581. Dr.

Weinstein has recommended Plaintiff undergo an anterior interbody fusion, a complex and difficult orthopaedic procedure which involves an approach to the spine from the patient's front. Tr. at 1421. Plaintiff has expressed a fear of such an involved surgery and has to date not been willing to proceed with this surgical option. Tr. at 1179.

In addition to this significant spinal pathology, Plaintiff has been diagnosed with orthopaedic impairments in his knees and hands. A 2006 MRI revealed a horizontal tear in Plaintiff's right medial meniscus, which has produced chronic knee pain and has been unresponsive to various interventions. Tr. at 323, 383, 433, 451, 806, 835, 1409-10. Plaintiff also has undergone treatment for carpal tunnel syndrome for hand pain and numbness and for a repair of an injured thumb ligament. Tr. at 434, 1383.

Plaintiff has also suffered from significant and persistent mental disorders, including posttraumatic stress disorder ("PTSD"), and depression. Tr. at 241-42, 775, 958. Plaintiff's symptoms have included insomnia, intrusive memories, nightmares, withdrawal, and flashbacks. Tr. at 242, 392-93, 794. The VA has rated Plaintiff 50% disabled on the PTSD alone. Tr. at 1368. Plaintiff has been evaluated numerous times since his return from Iraq on the Global Assessment of Functioning Scale ("GAF"), with most scores in the range of 55-60. Tr. at 455, 892, 898, 905-06, 909, 940, 958, 1224, 1229, 1235, 1266, 1271, 1431. This range reflects moderate difficulty in social and occupational functioning and is commonly associated with a patient with few friends and conflicts with peers and coworkers. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000).

Plaintiff asserted an amended disability onset date of October 7, 2008, and the Administrative Law Judge ("ALJ") confirmed that Plaintiff has not engaged in any active

employment since that date. Tr. at 12. The ALJ further found that Plaintiff's severe impairments included degenerative disc disease, post-repair right thumb ligament, knee arthralgia, PTSD, and depression. Tr. at 12. The ALJ, following the five-step sequential process, determined that Plaintiff's multiple physical and mental impairments did not satisfy any of the Listings. Tr. at 14-15. Most notably, in regard to the 1.04 Listing for disorders of the spine, the ALJ made reference only to a 2009 plain x-ray of the spine and did not mention the 2004 and 2008 MRI findings that documented the presence of a herniated disc and nerve root displacement at L5-S1. Tr. at 783-84, 1189. The ALJ, in making her highly truncated 1.04 Listing analysis, also failed to mention the documented finding of positive straight leg raises and the treating specialist physician's diagnoses that included "neurogenic intermittent claudication" and "bilateral severe neuroforaminal stenosis" and opinion that it would be unsafe for the claimant to return to work with these impairments. Tr. at 754, 1037. Further, beyond a passing reference to having considered the individual and combined impact of Plaintiff's multiple physical and mental impairments, the ALJ did not address in any substantive way the combined effect of the claimant's spinal pathology, chronic knee pain, PTSD, and depression on his ability to sustain work in a competitive marketplace. Tr. at 13-15.

After concluding that Plaintiff failed to satisfy any Listing or its equivalent, the ALJ then moved to Step Four to determine whether the claimant has the residual functional capacity to sustain work in the competitive workplace. The ALJ recognized that Plaintiff's impairments significantly limited his functional capacity but ultimately concluded that he still retained the capacity for sedentary work. Tr. at 16. In reaching this conclusion, the ALJ addressed the unwillingness of Plaintiff to undergo the challenging surgery recommended by Dr. Weinstein,

-7-

which the ALJ asserted raised issues about the claimant's credibility and the seriousness of his

spinal impairments. Tr. at 17-18, 21. Further, while acknowledging that Dr. Weinstein had

offered no opinion in the record regarding Plaintiff's likely ability to return to work if he

underwent the anterior interbody fusion surgery, the ALJ contended that Dr. Weinstein had

"implied that there was a possibility the claimant could return to work if the had the surgery

performed." Tr. at 21.

Having concluded that Plaintiff was capable of performing sedentary work and was

unable to perform his past relevant work, the ALJ then concluded that Plaintiff was not disabled

because there were jobs in sufficient number in the national economy that the Plaintiff could

perform. Tr. at 58-61. The vocational expert, on whose opinions the ALJ relied, further testified

under examination by Plaintiff's counsel that there were not jobs Plaintiff could perform if his

ability to focus, attend to, and concentrate on his work were disrupted up to 20% of the workday

due to distractions of pain, medication side effects, and psychological symptoms. Tr. at 61.

Following the issuance of the ALJ's decision and the Appeal Council failing to provide

review, the ALJ's decision became the order of the Commissioner. Plaintiff timely filed

objections to the Commissioner's denial of Social Security disability benefits, which is now

before this Court for review.

## Discussion

### A. The failure of the Commissioner to adequately address the 1.04 Listing for disorders of the spine.

Listing 1.04 addresses specific disorders of the spine, including a herniated nucleus

pulposus, spinal stenosis, and degenerative disc disease, which result in a compromise of the

nerve root. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 1.04. A claimant with such a spinal

impairment may qualify under this Listing for disability if there is (a) evidence of nerve root

compression charaterized by neuro-anatomic distribution of pain, limitation of motion of the

spine, motor loss accompanied by sensory or reflex loss, and, if involvement of the lower back,

positive straight leg raises; or (b) spinal arachnoiditis; or (c) lumbar spine stenosis, resulting in

pseudoclaudication, established by imaging, manifested by chronic non-radicular pain and

weakness that results in an inability to ambulate effectively. *Id.* Further, even where a claimant

does not meet each of the requirements for a listing, an applicant with multiple impairments may

satisfy the requirements of a Listing where the claimant's other impairments are in combination

the medical equivalent of the criteria of the listed impairment. Thus, although a claimant's

impairment, standing alone, may not satisfy a Listing, the combined effect of multiple

impairments may meet the requirements for a Listing. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R.

§ 404.1526(b)(ii). The Fourth Circuit has been particularly concerned with the Commissioner's

denial of disability by "fragmentiz[ing]" multiple impairments, rather than considering and

explaining the combined effects such impairments. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.

1989).

The ALJ's 1.04 Listing analysis is remarkable for its abbreviated and inadequate

consideration of Plaintiff's indisputably significant spinal impairments. The only references to

the factual record in the ALJ's decision was a April 2009 plain film of the spine that showed

mild degenerative disease and that in September 2010 Plaintiff was documented with the ability

to walk 10 blocks. Tr. at 14. The ALJ omitted several critical facts which are highly probative to

the 1.04 Listing, particularly a 1.04(a) Listing, including: (1) two spinal MRI's, performed in

2004 and 2008, confirmed a herniated nucleus pulposus at L5, disc protrusion, and S1 nerve root compromise, Tr. at 783-84, 1189; (2) multiple treating physicians, including a treating orthopaedic surgeon, have diagnosed Plaintiff with degenerative disc disease, bilateral severe spinal stenosis, and neural impingement, Tr. at 265, 377, 496, 754, 756, 1037, 1421; (3) numerous treating physicians have documented the presence of chronic, severe, radiating pain and/or numbness secondary to the spinal abnormalities, Tr. at 249, 754, 765, 1037, 1180; (4) uncontested evidence of positive straight leg raises, Tr. at 1177, 1180; and (5) pain so severe that the patient is chronically managed on methadone, Tr. at 581, 781. Additionally, Plaintiff has chronic knee pain secondary to a tear in the right medial meniscus that has not been responsive to interventions and has exacerbated his physical and mental impairments. Tr. at 323, 383, 433, 451, 806, 835, 1409, 1410. These various physical impairments are so significant that the Commissioner does not dispute that Plaintiff, who was 43 years of age at the time of alleged onset of October 7, 2008, cannot frequently carry any object weighing 10 pounds or more and is disabled from all but sedentary work. Tr. at 16.

Plaintiff's mental impairments have also presented considerable challenges. The most significant of these impairments has been Plaintiff's PTSD, characterized by flashbacks, nightmares, insomnia, withdrawal, and intrusive memories. Tr. at 241-42, 775, 958. Plaintiff's treatment notes document his constant fear of death while riding in multiple convoys in Iraq, witnessing his sergeant having his legs blown off, and withdrawal from his family upon his return to the United States. Tr. at 393, 775, 794, 907. The record documents a history of suicidal ideation, a possible suicide attempt, and depression. Tr. at 602, 605, 610, 619, 958, 1271.

The record clearly demonstrates that the ALJ's 1.04 Listing analysis was completely inadequate and would certainly require reversal. The record also demonstrates that the ALJ's cursory consideration of the combined effects of Plaintiff's multiple impairments was inadequate and resulted in the type of fragmentized consideration explicitly prohibited by the Fourth Circuit in *Bowen v. Walker*. But the record establishes much more. It demonstrates a record of an American veteran whose wartime service devastated him physically and mentally, leaving him with a severe spinal impairment at L5-S1 that includes a herniated disc, spinal stenosis, degenerative disc disease, and nerve root compromise. The consequences of those severe spinal cord disorders, well documented in this over 1,500-page record, demonstrate the satisfaction of all of the requirements of a 1.04(a) Listing. Moreover, the severe knee impairment, PTSD, and depression certainly constitute the medical equivalent of any element of the 1.04(a) Listing that could remotely be claimed to be lacking. In short, this record establishes Plaintiff's right to disability under a 1.04(a) Listing and that a finding to the contrary would not be supported by substantial evidence.[1]

---

[1] In an effort to justify her decision to deny disability benefits to Plaintiff, the ALJ has attempted to minimize the extent of Plaintiff's spinal disorders, suggesting that they are insubstantial and the claimant's complaints of severe pain are not credible. Tr. at 17, 21. This is oddly inconsistent with the ALJ's findings that Plaintiff cannot frequently lift 10 pounds, is limited by his physical ailments to no more than sedentary work, and should be willing to undergo the extraordinarily challenging anterior interbody fusion procedure. Despite the ALJ's efforts to minimize Plaintiff's spinal impairments, the 2004 and 2008 MRIs clearly establish the presence of severe spinal abnormalities and neural impingement, and the diagnoses and opinions of the claimant's treating specialist physician confirm the gravity of his condition.

-11-

**B. The ALJ's inappropriate determination that Plaintiff's unwillingness to undergo the recommended anterior interbody fusion surgery constitutes medical noncompliance that undermines the claimant's credibility and claims of severe pain.**

It is well settled that an applicant for Social Security disability benefits may be deemed ineligible for an award where he has been noncompliant with medical treatment. *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985). However, "[i]f noncompliance is ultimately to be found the basis for denying benefits," the Commissioner bears the burden of producing evidence that the claimant's condition was "reasonably remediable" and he "lack[ed] good cause for failing to follow a prescribed treatment." *Id.* at 990-91. An essential element of the Commissioner carrying this burden is to demonstrate that had the claimant followed the prescribed treatment he could return to work. *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985).

The Commissioner has not remotely carried her burden in this matter. First, the record does not support a finding that Plaintiff would have been able to return to work had he undergone the elaborate proposed surgery. Indeed, the ALJ could claim the record showed no more than a mere possibility of Plaintiff returning to work and this could only be implied from the medical record. Tr. at 21. Second, the Commissioner has not demonstrated that Plaintiff lacked a good faith basis for declining the recommended surgery. Plaintiff had already submitted to one failed surgery and suffered significant postoperative complications. The proposed procedure carried with it all of the risks associated with any spine surgery, including death, paralysis, and infection, and carried added risks associated with the anterior approach. The record indicates Plaintiff carried an understandable fear of this additional and involved surgery, and the Commissioner has

-12-

failed to carry her burden of demonstrating the absence of Plaintiff's good faith in declining to undergo the procedure.

## The Remedy

Upon determining that the Commissioner's decision must be reversed, the Court has the option of remanding the decision to the Commissioner or awarding benefits to the Plaintiff. 42 U.S.C. § 405(g). It has been this Court's general practice to remand decisions to the Commissioner rather than granting an award. It is well recognized, however, that where the record is fully developed and it is clear that the Commissioner would be required to award benefits on remand, an award of disability insurance benefits by a district court is appropriate. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Williams v. Comm'r of Soc. Sec.*, 104 F. Supp. 2d 719, 721 (E.D. Mich. 2000). This is particularly true where there has been a significant lapse of time in the administrative processing of the claim which has placed a heavy financial burden on the disabled claimant. *Benecke*, 737 F.3d at 595; *Holohan*, 246 F.3d at 1210; *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984).

As indicated above, the record demonstrably establishes Plaintiff's right to disability benefits under a 1.04(a) Listing and/or its equivalent. A remand for further administrative action by the agency would simply delay even longer the Plaintiff's award of benefits. Further, this matter has been pending for over five years, and the Court finds under the circumstances of this case that any further delay to conduct another administrative hearing would simply compound the injury already resulting from the protracted and unjustified delay in the award of benefits. Having suffered his disabling injuries in the service of his country, the Plaintiff deserves better

-13-

than he has received.  Clearly, the proper course is for this Court to reverse and remand with the direction to award benefits.

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner, pursuant to 42 U.S.C. § 405(g), and remands the matter to the Commissioner with the direction to award disability insurance benefits with an onset date of October 7, 2008.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge


December 23, 2013
Charleston, South Carolina